UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-CV-10882-RGS

MILTON ORLANDO ZAPATA

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security

MEMORANDUM AND ORDER ON
APPELLANT'S MOTION TO REVERSE
AND APPELLEE'S MOTION TO AFFIRM
THE DECISION OF THE COMMISSIONER

December 29, 2011

STEARNS, D.J.

Pro se plaintiff Milton Orlando Zapata seeks review of the final decision of the Commissioner of the Social Security Administration (SSA) adopting the Administrative Law Judge's (ALJ) determination that he is not disabled. Zapata contends that the ALJ misunderstood the date of the onset of his disability (the ALJ fixed it as of June 15, 2006, while Zapata maintains that the correct date is March 11, 2009). Zapata states, both in his Complaint and Brief, that he "currently is under medical supervision and treatment for symptoms which significantly interfere with [his] activities of daily living and functioning." Compl. ¶ 7; Pl. Br. ¶ 2. Zapata asks that the court reverse the decision of the Commissioner. As the only point of contention – the onset date of

Zapata's disability – has no bearing on the correctness of the ALJ's ultimate findings, the decision of the Commissioner will be AFFIRMED.

## BACKGROUND

*Administrative Proceedings*

Zapata applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on March 11, 2009. The Commissioner denied the applications initially and on a request for reconsideration. An appeal of the denials was heard on December 9, 2010, by ALJ Matthew Levin. In a decision dated December 23, 2010, the ALJ determined that Zapata is not disabled within the meaning of the Social Security Act. This decision became the final decision of the Commissioner on March 30, 2011, after the Decision Review Board failed to complete a timely review. Zapata then sought review in the district court pursuant to 42 U.S.C. § 405(g).

*The ALJ's Decision*

In applying the mandated five-step sequential process,[1] the ALJ found at Step 1 that Zapata met the insured status requirements of the Social Security Act through the date of the hearing, and that he had not engaged in any substantial gainful activity since June 15, 2006, the alleged onset date. At Step 2, the ALJ found that Zapata suffered from three "severe" impairments: degenerative disc disease of the lumbar spine, hip

---

[1] *See* 20 CFR 404.1520(a).

pain, and chronic bilateral shoulder pain. He did not deem Zapata's depression "severe" because the record evidence established that it had only a minimal (if any) impact on his ability to perform basic mental work. The ALJ noted that the State-agency medical consultants had found no medical impairment of depression, Zapata has never sought treatment or medication for depression, and Zapata himself testified that he was only "a little" depressed. Tr. at 32, 270-282. The ALJ also noted that there was no medical evidence to support Zapata's claim of an arthritic condition in his hands and his fingers.

At Step 3, the ALJ found that Zapata did not have an impairment or combination of impairments that met or medically equaled an entry in the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, Sect. 4, App. 1. In assessing Zapata's residual functional capacity (RFC), the ALJ found that Zapata retained the RFC to perform "sedentary work as defined in 20 C.F.R. §§ 404.1567(a) & 416.967(a) except that he can only occasionally climb, balance, crouch, crawl or push and pull with his upper extremities, can never stoop or kneel, and is limited to unskilled work." Tr. at 15. At Step 4, the ALJ concluded that Zapata could not perform any of his past relevant work as a cook or landscaper. However, at Step 5, the ALJ determined that the Commissioner had met his burden of showing that Zapata could nonetheless perform other jobs that exist in significant numbers in the national economy. *See Gonzalez Perez v. Sec'y of HEW*,

3

572 F.2d 886, 888 (1st Cir. 1978). As a consequence, the ALJ found that Zapata was not "disabled" within the meaning of the Social Security Act. This appeal ensued.

## DISCUSSION

The Commissioner's findings are conclusive if they are supported by substantial evidence. *Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). "Substantial evidence . . . means evidence reasonably sufficient to support a conclusion. Sufficiency, of course, does not disappear merely by reason of contradictory evidence. . . . [The] question [is] not which side [the court] believe[s] is right, but whether [the ALJ] had substantial evidentiary grounds for a reasonable decision . . . ." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998). The Commissioner's findings, however, "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1). The Act further provides that

> an individual shall be determined to be under a disability only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers whether in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

While Zapata states that he "does not agree with the decision of the [C]ommissioner," he fails to point to any of the ALJ's findings which are not supported by substantial evidence or to articulate any perceived flaws in the AlJ's analysis of the medical records. *See Manso-Pizzaro*, 76 F.3d at 16 (reversal is warranted only if the ALJ committed a legal or factual error in evaluating the claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ); *Roman-Roman v. Comm'r of Soc. Sec.*, 114 F. App'x 410, 411 (1st Cir. 2004) (same). *See also Lovern v. Astrue*, 2011 WL 4621455, at *6 (D. Mass. Sept. 29, 2011) ("[I]t is the parties' burden, not the court, to develop arguments in support of their

claims/positions."); *Tarantino v. Astrue*, 2011 WL 1540207, at *4 (D. Mass. Apr. 19, 2011) ("[E]ven taking into account the leniency the court extends to *pro se* litigants, . . . [p]laintiff's failure to make any argument is reason enough to deny a motion to reverse and, concomitantly, allow the Commissioner's motion to affirm.").

The only alleged error of the ALJ cited by Zapata is the supposed confusion over the onset date of his disability. However, in both his DIB and SSI applications, Zapata claimed that his disability began on June 15, 2006. *See* Tr. at 123, 130. While the ALJ noted evidence that Zapata had worked in 2006, he nonetheless proceeded with the sequential step analysis. Tr. at 13. He concluded that Zapata was not disabled from June 15, 2006, through the date of the decision (December 23, 2010), a time span that clearly includes the period of disability that Zapata now claims – March 11, 2009, through December 23, 2010. Thus, if there was an error in establishing the onset date (the court is of the view that there was not), it signifies nothing.

## ORDER

For the foregoing reasons, Zapata's motion to reverse the decision of the Commissioner is <u>DENIED</u>. The Commissioner's cross-motion for an order of affirmance is <u>ALLOWED</u>. The Clerk will enter judgment accordingly and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE